NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SELMA OZTURK, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMSHER COLLECTION SERVICES, INC., et al.,<br><br>Defendants. | Civil Action No.: 21-18317<br><br>**OPINION** |

**CECCHI, District Judge.**

**I.     INTRODUCTION**

This matter comes before the Court by way of defendant Amsher Collection Services, Inc.'s ("Defendant") motion to dismiss (ECF No. 4) plaintiff Selma Ozturk's ("Plaintiff") putative class-action complaint (ECF No. 1), pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff opposed Defendant's motion (ECF No. 6), and Defendant replied (ECF No. 9). Each party subsequently provided supplemental authority and related responses (ECF Nos. 10, 14, 15, 16). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Fed. R, Civ. P. 78(b). For the reasons set forth below, the Court grants Defendant's motion to dismiss and the complaint is dismissed without prejudice.

**II.    BACKGROUND**

This matter arises out of Plaintiff's debt for cell phone services, and subsequent debt collection efforts made by Defendant Amsher Collection Services, Inc. on behalf of T-Mobile US,

Inc. ("T-Mobile"). Plaintiff alleges that on May 4, 2021, Defendant sent Plaintiff a collection letter (the "Letter") that was "misleading" and "g[ave] away" Defendant's obligations as a debt collector concerning identity theft notifications under section 1681m(g) of the Fair Credit Reporting Act ("FCRA"). ECF No. 1 at ¶¶ 32, 42, 45. As a result, Plaintiff claims that the Letter violated her rights under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq*. *See generally* ECF No. 1.

Plaintiff, a New Jersey resident, alleges that sometime prior to May 4, 2021, she incurred a financial obligation to T-Mobile, which was referred to Defendant for collection once in default. ECF No. 1 at ¶¶ 15–16, 21-23. On May 4, 2021, Plaintiff purportedly received and read the Letter from Defendant, which provided information concerning how to make an identity theft claim if Plaintiff believed the T-Mobile services were obtained fraudulently using her name. *Id.* at ¶¶ 27, 29-30. The Letter also listed the $160.00 amount of the obligation (*see id.* at ¶ 28), and appears to contain disclosures that implicate Plaintiff's rights under the FDCPA (*see id*. at ¶¶ 25, 34).

The two-page Letter is printed on Defendant's letterhead.[1] ECF No. 1 Ex. A. The first page begins with a paragraph concerning action to take if Plaintiff believes she is a victim of identity theft in connection with the debt:

> If you are a victim of identity theft and believe that someone has used your personal information to fraudulently obtain these T-Mobile services in your name, please complete the enclosed form and return it to T-Mobile for investigation. Once they receive this documentation, the above referenced account will be placed on hold while the investigation is conducted.

*Id.* This section of the Letter goes on to note that Plaintiff's completed identity theft documentation, including the required police report, should be sent directly to T-Mobile at the

---

[1] As Plaintiff attached the Letter to her complaint, the Court may consider its contents at the motion to dismiss stage. *Pension Ben. Guar. Corp. v. White Consol. Indus. Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

address provided. *Id.* It also provides a phone number to reach Defendant if the debtor requires additional information is required. *Id.*

In addition to the information concerning identity theft, the first page of the Letter discloses information relating to Plaintiff's debt. Specifically, it includes an "Account Summary" box on the right side of the page that includes the name of the original and current creditors (both T-Mobile), account numbers with Defendant and T-Mobile, and the total debt due ($160.00). *Id.* Below this is a QR code, with a caption: "Scan this code with your smartphone to pay your bill online." *Id.* Finally, in the body of the text of the letter, underneath the information about identity theft, the letter explains in bold: "This communication is from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id.*

The identity theft form described on page one is enclosed as page two and entitled "Collection Dispute for Fraudulent Activity." *Id.* The form seeks various information from the disputant, including the relevant T-Mobile account number, last four digits of social security number, name, mailing address, contact number, and reason for dispute. *Id.* The form also advises that, in the case of an identity theft dispute, a police report and photocopy of government identification are also required. *Id.* The form concludes with a statement and corresponding signature line indicating that the disputant: (i) certifies the fraudulent nature of the debt, (ii) consents to T-Mobile conducting an investigation, (iii) agrees to assist in any prosecution to recover the losses if fraudulent activity is found, and (iv) acknowledges T-Mobile will pursue payment in full from the responsible party. *Id.* The form also provides a mailing and email address at T-Mobile to which the disputant can send the form. *Id.*

On September 7, 2021, Plaintiff brought this putative class-action against Defendant and other unnamed defendants in the Superior Court of New Jersey for violations to sections 1692e

and 1692f of the FDCPA, as well as the New Jersey Declaratory Judgment Act. ECF No. 1 Ex. A. Defendant removed this action to this Court on October 8, 2021, based on the Court's federal question jurisdiction. *Id.* Defendant then filed the instant motion to dismiss the complaint on October 29, 2021. ECF No. 4. Plaintiff opposed the motion (ECF No. 6), and Defendant replied (ECF No. 9). Each party provided the Court with supplemental authority (ECF Nos. 10, 15), and a reply to the adversary's supplemental authority (ECF Nos. 14, 16).

### III.  LEGAL STANDARD

#### a.  Article III Standing

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,'" and, as a result, a plaintiff must have "standing" to sue. *Lance v. Coffman*, 549 U.S. 437, 439 (2007); *see also Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy."). Although Defendant does not challenge Plaintiff's standing here, this Court has an independent obligation to confirm the existence of subject matter jurisdiction—and thus standing—before proceeding to an adjudication of Plaintiff's claims. *See Arbaugh v. Y&H Corp.,* 546 U.S. 500, 514 (2006).

"The standing inquiry . . . focus[es] on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Constitution Party of Pa v. Aichele*, 757 F.3d 347, 360 (3d Cir. 2014) (alterations in original) (quoting *Davis v. FEC*, 554 U.S. 724, 734 (2008)). To establish standing, a plaintiff must satisfy a three-part test, showing: "(1) an 'injury in fact,' *i.e.*, an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, *i.e.*, traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court." *Nat'l Collegiate Athletic Ass'n v. Governor of N.J.*, 730 F.3d 208, 218 (3d Cir. 2013) (quoting *Summers v. Earth Island Inst.*, 555

U.S. 488, 493 (2009)), *abrogated on other grounds by Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461 (2018). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

### b. Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertions' devoid of further factual enhancement," will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (citations omitted).

## IV. DISCUSSION

Plaintiff alleges that the Letter makes false and deceptive representations about Defendant's legal obligations concerning identity theft under 15 U.S.C. § 1681m(g) of the FCRA, in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692f of the FDCPA. Additionally, Plaintiff alleges that the Letter is misleading because it is an attempt to collect a debt and/or information related to a debt couched as an informational letter concerning identity theft assistance, also in violation of §§ 1692e and 1692f. *See generally* ECF No. 1 Ex. A. In opposition, Defendant argues that Plaintiff is improperly bringing a purported violation of FCRA as a FDCPA claim. Moreover, Defendant asserts that the Letter is purely informational and could not be understood as materially false, deceptive, or misleading. ECF No. 4 at 11–14. As discussed below, the Court finds: (1) that

Plaintiff has standing to assert an informational injury under the FDCPA and (2) that the Letter does not violate the FDCPA.

### a. Article III Standing

Before the Court can address the merits of this dispute, it must first determine whether it has subject-matter jurisdiction over the case. *See Hollingsworth v. Perry,* 570 U.S. 693, 704-05 (2013). And, as noted above, Defendant's failure to contest standing does not alleviate this Court's independent obligation to confirm the existence of standing before proceeding to an adjudication on the merits of Plaintiff's claims. *See Arbaugh*, 564 U.S. at 501; *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016).

Of the three components of standing, at issue here is whether Plaintiff has satisfied the injury-in-fact requirement—that is, whether her asserted injuries are "concrete." *Transunion LLC v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (citations omitted). Plaintiff alleges that she suffered concrete intangible harm resulting from Defendant's violations of sections 1692e and 1692f by virtue of Defendant's misleading Letter and its false statements about her rights and Defendant's corresponding obligations concerning identity theft communication.[2]

As relevant here, the Supreme Court has held that various intangible harms may, under certain circumstances, satisfy the concrete harm requirement. *Id*. at 2204. Consequently, the Third Circuit has cautioned that the Court's recent rulings suggest a "thorough discussion of concreteness is necessary in order for a court to determine whether there has been an injury-in-fact." *Bock v. Pressler & Pressler, LLP*, 658 F. App'x 63, 65 (3d Cir. 2016) (citing *Spokeo Inc.*, 578 U.S. at 334).

---

[2] Although Defendant did not challenge standing, Plaintiff fully briefed the issue. *See* ECF No. 6 at 15-19. In reply, Defendant confirmed it was not contesting standing. *See* ECF No. 9 at 7-8.

6

This is especially so in cases of alleged statutory violations where, as here, a court must ensure that the harm is more than just a "bare procedural violation." *Spokeo*, 578 U.S. at 341.

Post-*Spokeo*, courts in this district examining section 1692e "favor[] finding concrete injury under the FDCPA where violations of the statute have been alleged." *Napolitano v. Ragan & Ragan*, No. 15-2732, 2017 WL 3535025, at *6 (D.N.J. Aug. 17, 2017). In fact, courts in this district have found that various types of alleged FDCPA allegations amount to substantive, concrete injuries conferring standing. *See, e.g., Rock v. Greenspoon Marder, LLP,* No. 09-3522, 2021 WL 248859, at *4 (D.N.J. Jan. 26, 2021) (Plaintiff's allegation that various components of debt collection letter were misleading amounted to concrete harm); *Rhee v. Client Servs., Inc.,* No. 19-12253, 2020 WL 4188161, at *4 (D.N.J. July 21, 2020) (plaintiff's allegations of a false and misleading letter even without pleading actual confusion sufficient to confer standing); *Hovermale v. Immediate Credit Recovery, Inc.,* No. 15-5646, 2018 WL 6322614, at *3 (D.N.J. Dec. 4, 2018) ("right to receive accurate and non-misleading information" under FDCPA is substantive right conferring standing); *Napolitano,* 2017 WL 3535025, at *6 (collecting cases in which allegations of FDCPA informational injury confers standing).

Courts in this district have also acknowledged that the merits of an allegation of an FDCPA violation—even if suspect—do not necessarily alter the standing analysis. *See, e.g., Napolitano*, 2017 WL 3535025, at *7, *9 (finding standing before dismissing on the pleadings)*; Thomas v. Youderian,* 232 F. Supp. 3d 656, 6771 (D.N.J. 2017) ("The pitfalls of such a claim, at the merits stage, are many. But these allegations are sufficient to support Article III standing and permit an examination of the merits."). In sum, the courts in this district routinely find that alleging that a debt collector has provided (and the debtor has subsequently consumed) false information

7

concerning the collection of a debt is a "substantive, and not merely procedural, statutory right under the FDCPA" that confers Article III standing. *Napolitano,* 2017 WL 3535025, at *7.

Here, Plaintiff has alleged that the Letter was misleading and deceptive by seeking to collect a debt and related information through the guise of identity theft assistance, while also misrepresenting Defendant's obligations concerning identity theft. *See generally* ECF Nos. 1, 6. Because misleading collection letters infringe upon on the substantive right granted by the FDCPA to be free from receiving allegedly false or deceptive information relating to the collection of a debt, there is indeed an allegation here of an injury-in-fact. While the merits of this claim require further analysis, Plaintiff has alleged this Letter risks a harm that is sufficiently concrete to confer Article III standing.

### b. FDCPA

Turning to the merits of Plaintiff's claims, to prevail in an FDCPA action, a plaintiff must prove that "(1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (citations omitted). Plaintiff has sufficiently pleaded the first and second elements of her claim: Plaintiff was a consumer as she incurred a debt for cell phone services that were primarily for personal, family and household purposes (ECF No 1. at ¶¶ 15–18), and Defendant is the debt collection service to which the original creditor referred the obligation for the purposes of collection (*id.* at ¶ 21). As to the third element, Defendant asserts that the Letter "does not attempt to collect a debt," which, if true, would defeat Plaintiff's claim. ECF No. 4 at 11. The parties also dispute element four, specifically, whether the Letter has violated a provision of the FDCPA, namely §§ 1692e and/or 1692f.

### i. Attempt to Collect a Debt

As an initial matter, if the Letter at issue is not an attempt to collect a debt, Plaintiff's FDCPA claim must fail. *See Moyer*, 991 F.3d at 470. Plaintiff points to three aspects of the Letter to support her claim that it is an attempt to collect a debt: (1) the disclaimer in bold saying "This is an attempt to collect a debt"; (2) the display of her account number and amount of debt owed; and (3) the QR code and text indicating Plaintiff can "[s]can this code with your smartphone to pay your bill online." ECF No. 1, Ex. A. Defendant, for its part, notes that "[t]he animating purpose of the letter was purely informational and an effort to assist plaintiff" if she was a victim of identity theft, there was no explicit demand for payment, and the disclaimer was simply to comply with the FDCPA. ECF No. 9 at 4-5; *see also* ECF No. 10 at 2-3.

Under the FDCPA, "a communication need not contain an explicit demand for payment to constitute debt collection activity." *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 245 (3d Cir. 2014). Rather, communications that are "part of a dialogue to facilitate satisfaction of the debt" are considered attempts to collect debt for the purpose of FDCPA claims. *Id.* at 246. "A letter that is not itself a collection attempt, but that aims to make such an attempt more likely to succeed" falls within this category. *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013) (citations omitted). Specifically, courts in this Circuit have found that letters from debt collectors that contain express language attempting to collect a debt should be taken at their word. *See McLaughlin*, 765 F.3d at 246 (finding letter from Defendant stating it is a debt collector attempting to collect a debt is a communication related to collecting a debt); *Martin v. Fein Such Kahn & Shepard, P.C.*, No. 14-3837, 2017 WL 2958501, at *5 (D.N.J. July 11, 2017) ("Given this disclaimer [that the letter was an attempt to collect debt and any information obtained

9

will be used for that purpose], it is impossible to read this this [sic] letter is anything other than a debt collection attempt.").

Here, even if the text of the Letter is largely concerned with identity theft assistance, it nevertheless includes bolded, express language indicating it is an attempt to collect a debt. And although communications from debt collectors must be considered "in their entirety," *Campuzano-Burgos v. Midland Credit Mgmt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008)*,* Defendant essentially argues the reader should ignore this language altogether.[3] Moreover, Defendant's Letter clearly aims to make its debt collection attempts more likely to succeed. *Simon*, 732 F.3d at 266. By noting the amount of debt and providing a QR code below it that allows for immediate online payment, Defendant has offered a reminder of the debt and a method to make payment. When the disclaimer and QR code are taken together, they underscore that the Letter was an attempt to collect the debt.

Accordingly, the Court finds that Plaintiff has thus sufficiently pleaded that the Letter was an attempt to collect a debt.

### ii. Violations of FDCPA

Turning to whether Defendant violated provisions of the FDCPA, Plaintiff alleges that Defendant violated sections 1692e and 1692f. Specifically, Plaintiff claims: (i) that the content

---

[3] Defendant's argument that this disclaimer was required by the FDCPA fails by its own circularity. The FDCPA requires disclosure "in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose," and "in subsequent communications that the communication is from a debt collector." 15 U.S.C. 1692e(11). However, this disclosure requirement "is not required on communication that is for strictly informational purpose [sic], but is mandatory whenever the purpose of the communication is to induce payment by the recipient." *Martin*, 2017 WL 2958501, at *4. Therefore, to the extent such a disclaimer was required, it would undercut Defendant's contention that the Letter was not an attempt to collect a debt. Conversely, if it was indeed a purely informational letter, the disclosure was not required.

10

of the Letter misrepresents Defendant's obligations concerning identity theft imposed by section 1681m(g) of FCRA and (ii) that the Letter's simultaneous effort both to provide identity theft assistance and collect a debt is false and misleading, in violation of sections 1692e, 1692e(2)(A), 1692e(5), and 1692e(10). *See generally* ECF Nos. 1, 6. Plaintiff also alleges that these practices constitute unfair or unconscionable means to attempt to collect any debt, in violation of section 1692f. *Id.*

When evaluating whether a debt-collection activity violates a provision of the FDCPA, like section 1692e or 1692f, the Court employs the "least sophisticated debtor" standard. *Moyer*, 991 F.3d at 470. "The standard is an objective one, meaning that the specific plaintiff need not prove that she was actually confused or misled, only that the objective least sophisticated debtor would be." *Id.* (citations omitted). While this standard protects "naive" consumers, it nevertheless prevents liability for "bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (citations omitted). Indeed, even the least sophisticated debtor is "bound to read collection notices in their entirety" such that it "does not go so far as to provide solace to the willfully blind or non-observant." *Morello v. AR Res., Inc.*, No. 17-cv-13706, 2018 WL 3928806, at *5 (D.N.J. Aug. 16, 2018) (citations omitted). The Court will address Plaintiff's claims regarding each contested provision in turn.

### 1. Section 1692e

Plaintiff first claims that Defendant violated section 1692e. Section 1692e prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* Section 1692e goes on to provide a non-exhaustive list of violative conduct, including, as raised by Plaintiff here, (2)(A) "[t]he false representation of the

11

character, amount, or legal status of any debt"; (5) "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken"; and (10) "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." *Id.*

Construing Plaintiff's complaint in its most favorable light, she has not stated a claim as to a violation of section 1692e(2)(A). To adequately plead a section 1692e(2)(A) claim, the Plaintiff must at least point to a purported misrepresentation in either the character, amount, or legal status of the debt. *See Blaha v. First Nat'l Collection Bureau, Inc.*, No. 16-2791, 2016 U.S. Dist. LEXIS 157575, at *19 (Nov. 10, 2016) ("[O]ffering a "settlement" on a time-barred debt without proper notification that the debt is time-barred could plausibly mislead or deceive the least sophisticated consumer into believing that the debt was legally enforceable."); *Chulsky v. Hudson L. Offs., P.C.*, 777 F. Supp. 2d 811, 819 (D.N.J. 2011) (attempting to collect on a debt that is unenforceable under state law misrepresented the legal status of the debt). However, nothing in Defendant's Letter can be read to implicate falsely "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Plaintiff has not denied that she owes the debt referenced in the letter, nor that it is a valid debt, nor has she disputed the "$160.00" amount listed or its enforceability. As such, she has not identified any misrepresentations in the Letter to sustain her section 1692e(2)(A) claim.

Turning to Plaintiff's section 1692e(5) allegations, section 1692e(5) prohibits a debt collector from making a "threat to take any action that cannot legally be taken or that is not intended to be taken." Notably, this provision is only implicated if there is indeed a threat. *See, e.g., Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 176 (3d Cir. 2015), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019) (plaintiff failed to state a claim under 1692e(5) because there was no threat, "such as falsely threating to file suit"); *Skinner v.*

*Asset Acceptance, LLC*, 876 F. Supp. 2d 473, 478–79 (D.N.J. 2012) ("The letter, however, is an offer to settle the debt and does not constitute or contain a threat to take any action, which is the conduct prohibited by § 1692e(5)."). Here, Plaintiff has failed to point to anything in this Letter that could be read as a threat. In fact, Plaintiff has not pointed to anything in the Letter suggesting that Defendant plans to take any action at all. *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (complaint survived dismissal because debt collection letter suggested debt collector could take action in five days that it had no intention of taking)." Without a plausible allegation of a threat—or even some sort of responsive action—Plaintiff has not stated a claim under section 1692e(5).

Further, to the extent Plaintiff alleges Defendant's misrepresentation of its obligations under section 1681m(g) of FCRA amounts to a violation of section 1692e(5) of FDCPA, that claim also fails.[4] Plaintiff alleges that, by providing information on how Plaintiff can make an identity theft claim directly to T-Mobile, Defendant "gives away" its obligation "to accept a notification from Plaintiff that the debt Defendant is attempting to collect may be fraudulent or may be the result of identity theft" under section 1681m(g). This, in turn, misleads the least sophisticated debtor as to her rights regarding identity theft. ECF No. 1, ¶¶ 32–34. Essentially, Plaintiff argues that Defendant has offered a course of action concerning identity theft that "cannot legally be taken." § 1692e(5).

Plaintiff's attempt to find an FDCPA violation in a separate alleged FCRA violation suffers from multiple infirmities. First, Plaintiff provides no authority holding that this kind of FCRA

---

[4]Beyond a cursory reference in the Complaint, Plaintiff fails to reference section 1692e(5) in her briefing for this Motion. *See* ECF Nos. 1, 6, 14. Although Plaintiff does not expressly link her allegation about Defendant misrepresenting its obligations under FCRA to a section 1692e(5) violation, because this allegation most plausibly relates to an "action that cannot legally be taken," § 1692e(5), the Court addresses this argument within the confines of section 1692e(5).

13

violation, if proven, could support an FDCPA claim. In fact, Plaintiff concedes that Congress has not provided a private right of action for a violation of the provision of FCRA at issue. *See* 15 U.S.C. § 1681m(h)(8)(A) ("No civil actions"); *Huertas v. Citigroup, Inc.*, No. 13-2050, 2014 WL 10748338, at *5 (D.N.J. Aug. 21, 2014), *aff'd*, 639 F. App'x 798 (3d Cir. 2016) (private right of action unavailable for alleged violation of § 1681m).

Second, Plaintiff's reliance on *Chulsky* to support her assertion that a section 1681m(g) violation may indeed support an FDCPA claim is misplaced. *See* ECF No. 6 at 12-13. Insofar as *Chulsky* suggests a statute's failure to include a private right of action does not foreclose it from forming the basis of an FDCPA violation, such a suggestion is confined to "a misrepresentation of the ability to collect a debt under state law." 777 F. Supp. 2d at 820. That is, *Chulsky* held that the FDCPA may provide recourse for a debt collector's attempt to collect a debt that was legally unenforceable under New Jersey law. *Id.* at 821. The FCRA provision at issue here relates neither to Defendant's ability to collect a debt (which Plaintiff does not contest) nor to state law. *Chulsky* thus fails to support Plaintiff's contention that a violation of section 1681m(g) of FCRA can support an FDCPA claim.

Moreover, even if a misrepresentation of section 1681m(g) could sustain an FDCPA claim, Plaintiff has not plausibly alleged that one occurred. Section 1681m(g), addressing "[d]ebt collector communications concerning identity theft," provides two obligations on debt collectors if an initial condition is met. 15 U.S.C. § 1681m(g). First, it applies if a "debt collector on behalf of a third party that is a creditor or other user of a consumer report is notified that any information relating to a debt that the person is attempting to collect may be fraudulent or may be the result of identity theft." *Id.* Then, if this condition is met, the debt collector must notify the third party accordingly (*see* § 1681m(g)(1)), and, upon request of the consumer, provide the consumer with

14

all information she would be entitled to under a non-identity theft debt dispute (*see* § 1681m(g)(2)). However, Plaintiff does not allege that Defendant was ever "notified" by Plaintiff about anything concerning identity theft. Rather, the Letter's provision of information on identity theft appears to have been unsolicited. *See generally* ECF Nos. 1, 4, 6, 9. And indeed, Plaintiff fails to point to anything in the FDCPA (or FCRA for that matter) that prohibits a debt collector from proactively offering assistance on identity theft.[5] Nor does she allege either that Defendant failed to pass along a claim of identity theft to T-Mobile (*see* § 1681m(g)(1)), or, refused upon request to provide her with the information she would otherwise be entitled to under a debt dispute (*see* § 1681m(g)(2)). In sum, Plaintiff has failed to establish that a violation of FCRA's section 1681m(g) can sustain an FDCPA claim, and, even if it could, Plaintiff has failed to allege that such a violation occurred.

Plaintiff next claims that section 1692e(10)'s prohibition against "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer" was violated. Plaintiff appears to argue that the Letter, by offering Plaintiff a means to provide identity theft information to T-Mobile while also indicating that it was an attempt to collect a debt and related information, was materially misleading.[6] *See generally* ECF Nos. 1, 6. That is, the least sophisticated debtor would be confused about how to address her debt after receiving this Letter because the debtor would not know whether providing identity-

---

[5] To the extent that Plaintiff suggests the Letter tricks the least sophisticated debtor into paying a debt that is not hers rather than "jump through the hoops" of the identity theft process offered by Defendants, ECF No. 6 at 13, Plaintiff has nevertheless offered no authority suggesting that a debt collector or creditor may not seek helpful information from the victim, such as a police report or affidavit. *See Woods v. LVNV Funding, LLC, 27 F.4th 544, 547, 551* (7th Cir. 2022) (finding in FDCPA suit that identity theft investigation conducted by defendant in which debt collector sought filed police report and identity theft affidavit not unreasonable under FCRA).

[6] While it is not fully clear from the Complaint precisely which subsection is implicated by Defendant's alleged misrepresentation of the FCRA provision, to the extent Plaintiff suggests it forms the basis of a section 1692e(10) violation, such a claim fails for the same reasons discussed above in the context of section 1692e(5).

theft related information would also be used to collect the debt, given the Letter's disclaimer. Or, conversely, if she did not want to provide information that would be used to collect her debt, perhaps she would miss her opportunity to assert identity theft. ECF No. 6 at 14. By contrast, Defendant argues that there is nothing false or deceptive in the Letter because any information collected for an identity theft claim was clearly to be sent directly to the creditor, T-Mobile. ECF No. 9 at 6.

As noted above, the Third Circuit has established that a debt collection letter is "deceptive" if it has the potential to confuse the least sophisticated debtor. *See Jensen v. Pressler & Pressler*, 791 F.3d 413, 419 (3d Cir. 2015). However, the least sophisticated debtor standard also "contains a materiality requirement." *Heriveaux v. Durkin & Durkin LLC*, No. 18-13148, 2020 WL 487290, at *6 (D.N.J. Jan. 30, 2020). That is, "a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor." *Jensen,* 791 F.3d at 421.

To start, Plaintiff has pointed out nothing inaccurate in this Letter. *See Brown,* 464 F.3d at 455 ("A debt collection letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate.") (citations omitted). If Plaintiff were to follow the Letter's instructions to provide certain information for an identity theft claim, that information would indeed be used for the purpose of collecting a debt from whomever had stolen Plaintiff's identity and incurred the debt. The dispute form itself notes that the debt will ultimately be sought from the "responsible party." ECF No. 1 Ex. A. Moreover, it does not follow that a letter that permits two distinct responses is necessarily confusing. *See Pistone v. Halsted Fin. Servs., LLC*, No. 21-4167, 2022 WL 525934, at *3 (D.N.J. Feb. 22, 2022) (dismissing complaint because offer of a 20% discount while simultaneously providing two settlement options was not misleading). The two distinct courses of action plausibly suggested by this Letter are indeed mutually

16

exclusive—the debtor would understand that she could respond either by providing information on identity theft if she thought there was fraud, or by paying off the debt if it was indeed hers. Therefore, even the least sophisticated debtor would be able to understand her options in responding to the Letter.

Indeed, the debt collection letters that have been found to be materially misleading in this district drive the recipient towards a decision she would not otherwise take if not for the letter's misrepresentation or falsity. For example, in *Youderian*, the collection letter offered the debtor the option of paying the debt by check or money order for free, on the one hand, or by credit card for a $3.00 convenience fee, on the other. 232 F. Supp. 3d at 662. Because the plaintiff there alleged that such a processing fee was barred by law, that letter made an alleged misrepresentation that was capable of influencing the decision of the recipient—namely, possibly pushing him to pay by mail to avoid the fee or even to forego payment altogether. *Id.* at 678–79. Similarly, in *Griffin v. Andrea Visgilio-McGrath, LLC*, No. 17-0006, 2017 WL 3037387 (D.N.J. July 18, 2017), the collection letter included a statement that a debt would "continue to appear" on plaintiff's credit report although plaintiff alleged it would actually disappear of its own accord after seven years. *Id.* at *8. Accepting the plaintiff's allegation as true at the motion to dismiss stage, the court found the possibility of an indefinite black mark on a credit report "could well be material to a debtor weighing her options" of whether to pay now, later, or not at all. *Id.* By contrast, nothing in Defendant's Letter could be understood to deceptively push the least sophisticated debtor to make a decision she otherwise would not have. If anything, the identity theft information might assist a victim who is unaware of the opportunity to file an identity theft claim to do just that. But this is hardly misleading—let alone materially so—and irrelevant to the crux of Plaintiff's claim that the joint purposes of this Letter, when combined, were false, deceptive, and misleading.

Accordingly, Plaintiff has failed to state a claim that anything in the Letter had the potential to confuse the least sophisticated debtor.

### 2.  Section 1692f

"Section 1692f is a catchall provision providing that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  *Youderian*, 232 F. Supp. 3d at 672.  As a catchall provision, § 1692f only prohibits conduct that is "not specifically barred by the FDCPA's other provisions."  *Howard v. LVNV Funding, LLC*, 2020 WL 978653, at *7 (W.D. Pa. Feb. 28, 2020).  Thus, "[a] complaint will be deemed deficient under § 1692f if it does not identify any misconduct beyond which plaintiffs assert violate other provisions of the FDCPA."  *Strouse v. Enhanced Recovery Co.*, 956 F. Supp. 2d 627, 637 (E.D. Pa. 2013) (cleaned up).

As Plaintiff herself recognizes, her section 1692f claim is premised on the same theories as her section 1692e claim.  *See* ECF No. 6 at 6 ("Plaintiff's §1692f claims are premised on the same allegations as her §1692e claims, and therefore, the foregoing analysis as to plaintiff's §1692e claims will be dispositive as to her claims under §1692f on this Rule 12(b)(6) motion to dismiss.").  Thus, for the reasons why Plaintiff fails to state a claim under section 1692e, her claims under section 1692f also fail.  *Howard*, 2020 WL 978653, at *7.

### c.  New Jersey Declaratory Judgment Act

The remaining claim (Count 1) in the Complaint asserts a violation of state law, namely the New Jersey Declaratory Judgment Act.  Where a "district court has dismissed all claims over which it has original jurisdiction," it may decline to exercise supplemental jurisdiction over state law claims.  28 U.S.C. § 1367(c).  Here, the Court dismisses all the claims over which it has original federal question jurisdiction without prejudice and declines to exercise supplemental jurisdiction.  *Bonanni v. Purdy et al.*, No. 13-6212, 2013 WL 6579129, at *2 (D.N.J. Dec. 13,

2013) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction) (citations and quotations omitted).

## V.     CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 4) is granted and Plaintiff's complaint is dismissed without prejudice. An appropriate Order accompanies this Opinion.

**DATED**:  May 20th, 2022

*s/ Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**