NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SELMA OZTURK, individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>   v.<br><br>AMSHER COLLECTION SERVICES, INC., et al.,<br><br>   Defendants. | Civil Action No.: 21-18317<br><br>**OPINION** |

**CECCHI, District Judge.**

## I.   INTRODUCTION

This matter comes before the Court by way of defendant Amsher Collection Services, Inc.'s ("Defendant") motion to dismiss (ECF No. 21) plaintiff Selma Ozturk's ("Plaintiff") amended complaint (ECF No. 19, the "Amended Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(6); *see also* ECF No. 21-1 ("Br."). Plaintiff opposed Defendant's motion (ECF No. 22) ("Opp."), and Defendant replied (ECF No. 25) ("Reply"). The Court has considered the submissions made in support of and in opposition to the motion and decides this matter without oral argument pursuant to Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court grants Defendant's motion to dismiss the Amended Complaint.

## II.   BACKGROUND

The parties are familiar with the facts and procedural history of this matter, which are set forth in detail in this Court's Opinion dismissing the original complaint. *See Ozturk v. Amsher Collection Servs., Inc.*, No. 21-18317, 2022 WL 1602192 (D.N.J. May 20, 2022) [hereinafter

*Ozturk I*]. To restate the key points, Defendant, a debt collector working on behalf of T-Mobile, sent Plaintiff a collection letter on May 4, 2021, alerting her of action she could take if she believed her debt was the result of identity theft (the "Letter"). *Id.* at *1. Plaintiff had not previously notified Defendant or T-Mobile that she believed she was the victim of identity theft. The Letter explained that if Plaintiff wished to inform Defendant of possible identity theft, she should fill out a two-page form attached to the Letter (the "Reply Form"). *Id.* The Reply Form, in addition to asking for certain personal information and an explanation of the events at issue, asked for a copy of government identification and a police report. It concluded with a statement and corresponding signature line indicating that the debtor submitting the form: (i) certifies the fraudulent nature of the debt, (ii) consents to T-Mobile conducting an investigation, (iii) agrees to assist in any prosecution to recover the losses if fraudulent activity is found, and (iv) acknowledges T-Mobile will pursue payment in full from the responsible party. *Id.* at *2. Plaintiff read the Letter but did not respond to it; she has not indicated in either of her complaints whether she believes she was indeed a victim of identity theft.

As a result of the Letter, Plaintiff brought suit, alleging Defendant had violated various sections of the Fair Debt Collection Practices Act ("FDCPA"), including §§ 1692e(2)(A), 1692e(5),[1] 1692e(10), and 1692f. *See* ECF No. 1-2. In *Ozturk I*, the Court dismissed without prejudice Plaintiff's FDCPA claims pursuant to Rule 12(b)(6). The Court found: (1) Plaintiff had not adequately pleaded facts amounting to a misrepresentation of the "character, amount, or legal status" of the debt; (2) she did not sufficiently show that a misrepresentation of 15 U.S.C. § 1681m(g) of the Fair Credit Reporting Act ("FCRA") had occurred or, if it did, that it could support an FDCPA claim; and (3) it was not materially misleading for the Letter to offer Plaintiff

---

[1] Plaintiff has dropped her claim of a violation of § 1692e(5) in the Amended Complaint.

2

a means to report identity theft while also noting that it was a debt collection letter. *See Ozturk I*, 2022 WL 1602192, at *6–9.

Thereafter, Plaintiff filed her Amended Complaint, which added multiple paragraphs explaining how the Letter would mislead the least sophisticated consumer or otherwise violate the FDCPA. *See* Am. Compl. ¶¶ 31–32, 36–46, 60, 62–67. The Amended Complaint does not raise new factual allegations or causes of action. Instead, the Amended Complaint attempts to clarify Plaintiff's legal theory—namely that although "Defendant is not required to provide information related to identity theft in a communication [to] the consumer . . . [i]f Defendant chooses [to do so], then it is obligated to provide full and accurate information." *Id.* ¶¶ 31–32. That is, according to the Amended Complaint, the Letter "falsely represents what the consumer must do to notify the debt collector that she disputes the debt due to possible identity theft." *Id.* ¶ 36; *compare with* ECF No. 1-2 ¶¶ 32–33 (alleging the Letter "'gives away' its obligation to accept a notification" about the possibility of identity theft and "places undue burdens" not permitted by § 1681m(g)).

Defendant subsequently moved to dismiss the Amended Complaint (ECF No. 21). Plaintiff opposed that motion (ECF No. 22), and Defendant replied (ECF No. 25).

### III. <u>LEGAL STANDARD</u>

#### a. Federal Rule of Civil Procedure 12(b)(6)

To survive dismissal under Rule 12(b)(6), a complaint must meet the pleading requirements of Rule 8(a)(2) and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In evaluating the sufficiency of a complaint, a court must also draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). Ultimately, a complaint "that offers 'labels and conclusions' or . . . tenders 'naked assertion[s]'

3

devoid of 'further factual enhancement,'" will not withstand dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (alteration in original and citations omitted).

    b.  **FDCPA Claims**

Whether a collection letter complies with the FDCPA is a question of law for the court to decide pursuant to the least sophisticated consumer standard. *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). "The standard is an objective one, meaning that the specific plaintiff need not prove that *she* was actually confused or misled, only that the objective least sophisticated debtor would be." *Moyer v. Patenaude & Felix, A.P.C.*, 991 F.3d 466, 470 (3d Cir. 2021) (citation omitted). While this standard "protects naive consumers," it nevertheless "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care." *Id.* (citations omitted). Further, even the least sophisticated consumer is "bound to read collection notices in their entirety" such that it "does not go so far as to provide solace to the willfully blind or non-observant." *Morello v. AR Res., Inc.*, No. 17-13706, 2018 WL 3928806, at *5 (D.N.J. Aug. 16, 2018) (citations omitted).

**IV.**  **<u>DISCUSSION</u>**

As noted above, the crux of Plaintiff's Amended Complaint is her assertion that the Letter misrepresents Defendant's obligations concerning identity theft as laid out by 15 U.S.C. § 1681m(g) in FCRA. *See, e.g.*, Opp. at 14 ("[The Letter] violates the FDCPA because it used false, deceptive or misleading representations and means regarding the rights of the plaintiff-consumer and the obligations of defendant debt collector with respect to communications concerning identity theft."). That is, Plaintiff argues that § 1681m(g) obligates the debt collector to take certain steps upon being notified of identity theft. The Letter, by contrast, does not speak

4

of this obligation and instead directs the debtor to take certain actions should she wish to claim identity theft, including providing government identification and a police report. In Plaintiff's view, this purported conflict between what § 1681m(g) requires of the debt collector and what the Letter indicates to the debtor constitutes a misrepresentation of the law. *See* Opp. at 12–13. Because Plaintiff believes this purported misrepresentation of Defendant's FCRA obligations "changes the character of the debt" by "shift[ing] all the burden on plaintiff to address the issue of identity theft," *id.*, she asserts that she has a valid misrepresentation claim under the FDCPA. *See* § 1692e(2)(A) (the FDCPA prohibits "the false representation" of "the character, amount, or legal status of any debt"). Although Plaintiff does not directly say so, presumably § 1692e(10) of the FDCPA is implicated because the Reply Form seeks Plaintiff's personal information. *See* Am. Compl. ¶ 55 (asserting violation of § 1692e(10)); *see also* § 1692e(10) (barring "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt *or to obtain information concerning a consumer*" (emphasis added)).[2]

Defendant has offered multiple arguments why Plaintiff's Amended Complaint fails to state a claim. Defendant contends that Plaintiff has "failed to address the deficiencies the Court noted in the Court's May 20, 2022 Opinion . . . ." Reply at 3; *see also* Br. at 5 (arguing the Amended Complaint did not "change the paradigm" of her previously dismissed allegations). Defendant also argues that only an idiosyncratic reading of the Letter would find it misleading,

---

[2] For the sake of clarity, the Court notes that Plaintiff's cause of action is brought under the FDCPA, not FCRA. Although her claim asserts misrepresentation of obligations imposed by FCRA—specifically § 1681m(g)—Plaintiff recognizes FCRA's "§ 1681m(g) contains no provision permitting a private right of action for violations of its sections." ECF No. 6 at 12. Accordingly, she does not claim a violation of § 1681m(g), *per se*, but rather *misrepresentation about* § 1681m(g), which, she contends, implicates the FDCPA's prohibition on misrepresentation by debt collectors. *See generally* § 1692e. The FDCPA, of course, provides a private right of action. *See* § 1692k.

5

asserting that the Letter did not misrepresent § 1681m(g), and, in the alternative, such a misrepresentation would not materially harm the least sophisticated consumer. The Court now turns to these arguments.

As an initial matter, the Court reiterates that Plaintiff has not added any new factual allegations to her Amended Complaint. Rather, the paragraphs added seek to *explain* how the facts alleged in the original Complaint amount to a violation of the FDCPA. *See, e.g.*, Am. Compl. ¶ 36 ("Defendant's May 4, 2021 letter falsely represents what the consumer must do to notify the debt collector that she disputes the debt due to possible identity theft."); ¶ 39 ("The least sophisticated consumer upon reading the May 4, 2021 letter would be misled into believing that by following Defendant's instructions, and only notifying T-Mobile, that she was invoking certain protections afforded by the FDCPA."); *see also* ¶¶ 31–32, 36–46, 60, 62–67 (the new paragraphs). But courts in this Circuit routinely dismiss amended complaints that fail to add new factual allegations after having been previously dismissed for failure to state a claim. *See Lockhart v. Willingboro High Sch.*, 170 F. Supp. 3d 722, 734 (D.N.J. 2015) (dismissing amended complaint where no new allegations were made); *Aruanno v. Main*, No. 15-7982, 2020 WL 2849962, at *3 (D.N.J. June 2, 2020) (same). Moreover, as Defendant notes, there are several deficiencies noted in *Ozturk I* that Plaintiff has not addressed in the Amended Complaint. *See* Reply at 3–4; *Ozturk I*, 2022 WL 1602192, at *6–9. This includes, *inter alia*: (1) Plaintiff's failure "to point to anything in the FDCPA . . . that prohibits a debt collector from proactively offering assistance on identity theft" (*id.* at *8); (2) the lack of authority "suggesting that a debt collector or creditor may not seek helpful information from the victim, such as a police report or affidavit" (*id.* at *8 n.5 (citing *Woods v. LVNV Funding, LLC*, 27 F.4th 544, 547, 551 (7th Cir. 2022)); and (3) that Plaintiff did not point out anything inaccurate in the Letter (*id.* at *8). That Plaintiff did not cure these

6

deficiencies in the Amended Complaint warrants dismissal in its own right. *See Lockhart*, 170 F. Supp 3d at 734.

Nevertheless, to give the non-movant the benefit of all inferences in the Amended Complaint, the Court continues to the following question raised by Plaintiff's legal theory: whether the Letter misrepresents Defendant's obligations as to communications concerning identity theft. For this, Plaintiff relies on § 1681m(g), which provides in relevant part:

> If a person acting as a debt collector (as that term is defined in subchapter V) on behalf of a third party that is a creditor or other user of a consumer report is notified that any information relating to a debt that the person is attempting to collect may be fraudulent or may be the result of identity theft, that person shall—
> (1) notify the third party that the information may be fraudulent or may be the result of identity theft; and
> (2) upon request of the consumer to whom the debt purportedly relates, provide to the consumer all information to which the consumer would otherwise be entitled if the consumer were not a victim of identity theft, but wished to dispute the debt under provisions of law applicable to that person.

15 U.S.C. § 1681m(g). As this Court stated in *Ozturk I,* this FCRA provision (as opposed to FDCPA) establishes two obligations on the debt collector, triggered by notification that information related to the debt may be the result of identity theft. *See Ozturk I*, 2022 WL 1602192, at *8. First, the debt collector must pass along any information regarding the potential identity fraud to the creditor. Second, if requested by the consumer, the debt collector must also provide the consumer with all information that would be provided to someone disputing a debt. *Id.*

The Court finds that only an idiosyncratic reading would lead to the conclusion that the Letter misrepresents Defendant's obligations under § 1681m(g). *See Brown v. Card Serv. Ctr.*, 464 F.3d 450, 454 (3d Cir. 2006) (noting that the FDCPA "prevents liability for bizarre or idiosyncratic interpretations of collection notices by preserving a quotient of reasonableness and presuming a basic level of understanding and willingness to read with care"). Plaintiff asserts that the Letter "basically turns 15 U.S.C. §1681m(g) on its head by not giving plaintiff the opportunity

7

to either notify defendant that the debt sought to be collected may be fraudulent/the result of identity theft, or to request from defendant all information to which it would be entitled if it disputed the debt." Opp. at 12. However, the Letter not only affords Plaintiff the opportunity to notify Defendant about identity fraud, it expressly solicits such information. If anything, by alerting Plaintiff to the possibility of identity theft, the Letter makes it easier for her to notify the debt collector of such fraud. Nor does the Letter impact the least sophisticated consumer's ability to request additional information or alter the Defendant's obligation to provide that information if requested. See § 1681m(g)(2). Plaintiff's reading of the Letter and FDCPA liability essentially rests on a theory that merely invoking identity theft creates an affirmative duty to fully explain the details of § 1681m(g). See Am. Compl. ¶ 32 ("If Defendant chooses the [sic] provide information related to identity theft to the consumer, then it is obligated to provide full and accurate information."). Yet Plaintiff provides no authority suggesting such an affirmative duty exists. And, moreover, Plaintiff has not identified anything inaccurate in the Letter. Accordingly, Plaintiff's argument relies on an idiosyncratic reading of the Letter that is not supported by the least sophisticated consumer standard which is applied to FDCPA claims.

Moreover, as was the case in the original Complaint, the Amended Complaint does not sufficiently allege material harm. See Jensen v. Pressler & Pressler, 791 F.3d 413, 421 (3d Cir. 2015) ("[A] statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor."); Heriveaux v. Durkin & Durkin LLC, No 18-13148, 2020 WL 487290, at *6 (D.N.J. Jan. 30, 2020) ("[T]he materiality requirement, correctly applied, effectuates the purpose of the FDCPA by precluding only claims based on hypertechnical misstatements under § 1692e that would not affect the actions of even the least sophisticated debtor." (alteration in original and citation omitted)). Plaintiff argues that the "least sophisticated

8

debtor, like plaintiff, would be easily confused about her decision on how to address her debt after receiving defendant's May 4, 2021 debt collection letter." Opp. at 14. As discussed, any purported misstatement would not be capable of "influencing the decision of the least sophisticated debtor." *Heriveaux*, 2020 WL 487290, at *6 (citation omitted). Under Plaintiff's theory, the least sophisticated debtor would read the Letter, find that it wrongfully "shifts all the burden on plaintiff" that § 1681m(g) purportedly assigns to the debt collector, and then be left unsure whether to notify the Defendant about identity theft. Opp. at 12–13. But such a reaction does not reasonably follow from the text of the Letter. Indeed, "[r]ulings that . . . rely on unrealistic and fanciful interpretations of collection communications that would not occur to even a reasonable or sophisticated debtor frustrate Congress's intent to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." *Campuzano-Burgos v. Midland Credit Mgt., Inc.*, 550 F.3d 294, 299 (3d Cir. 2008) (quotation marks and citation omitted). Accordingly, Plaintiff's theory rests on the kind of "hypertechnical misstatement" the materiality standard is meant to filter out. *Jensen*, 791 F.3d at 422.

Further, the Court reiterates that § 1681m expressly denies a private right of action for any violations. *See Ozturk I*, 2022 WL 1602192, at *7 (noting that 15 U.S.C. § 1681m(h)(8)(A) prohibits civil actions for violations of §1681m and collecting cases holding no private right of action exists). While the Court recognizes that Plaintiff is not alleging a violation of § 1681m(g) *per se*, her assertion that misrepresenting the content of § 1681m(g) amounts to an FDCPA violation ultimately seeks to impose personal liability for conduct that Congress expressly left to the enforcement of public agencies. *See Huertas v. Citigroup, Inc.*, No. 13-2050, 2014 WL 10748338, at *5 (D.N.J. Aug. 21, 2014) ("The unambiguous language of § 1681m(h)(8) demonstrates that Congress intended to preempt private causes of action to enforce § 1681m."

9

(quoting *Perry v. First Nat. Bank*, 459 F.3d 816, 819–23 (7th Cir. 2006)), *aff'd*, 639 F. App'x 798 (3d Cir. 2016). Moreover, this nuanced distinction between a suit under § 1681m of FCRA (which is barred for lack of a private right of action) and an FDCPA suit alleging *misrepresentation* of that statutory provision (which Plaintiff brings here) underscores the idiosyncratic interpretation that would be required to find materially deceptive language in the Letter at issue here.

Therefore, the Court dismisses Plaintiff's FDCPA claims (Count II). Given those claims have been dismissed, the Court has "dismissed all claims over which it has original jurisdiction" and may therefore decline to exercise supplement jurisdiction over state law claims. 28 U.S.C. § 1367(c); *see also Ozturk I*, 2022 WL 1602192, at *9. Accordingly, the Court declines to exercise supplemental jurisdiction and dismisses without prejudice Plaintiff's claim under the New Jersey Declaratory Judgment Act (Count I).

## V.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss (ECF No. 21) is granted and Plaintiff's Amended Complaint is dismissed without prejudice. An appropriate Order accompanies this Opinion.

**DATED**: November 30, 2023

*/s/ Claire C. Cecchi*
_____
**CLAIRE C. CECCHI, U.S.D.J.**